**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**

                                                   **Case No. 5:02cr32-RH
Case No. 5:04cv140-RH/WCS**

**CLAY V. TURNER,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2255 MOTION

Pending in this case is Defendant's amended 28 U.S.C. § 2255 motion with supporting memorandum.  Doc. 84 (hereafter, references are to "§ 2255 motion" and "§ 2255 memo," respectively).  Defendant challenges his conviction and sentence of 120 months imprisonment, followed by 8 years supervised release, for possession with intent to distribute more than 500 grams of cocaine.  Doc. 57 (judgment).

The Government filed a response with exhibits.  Doc. 88.  Defendant filed a "motion to amend response and relevant pleadings," doc. 98, which is granted by separate order.  The motion and memorandum, supported by Exhibit A, is treated as an

amended reply, and previous replies will be disregarded.[1]  The memorandum attached to document 98 is hereafter referenced as "§ 2255 reply."

**Procedural History**

A brief summary of the record is set forth here by way of background.  Additional discussion is set forth as necessary to analysis of the § 2255 claims.

In a one count indictment, Defendant was charged with possession with intent to distribute more than 500 grams of a substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii).  Doc. 1.   The date of the offense was on or about September 28, 2002.  *Id.*

The Government filed an information and notice of a prior conviction pursuant to 21 U.S.C. § 851.  Doc. 22.  Based on this prior felony drug conviction, Defendant faced a term of ten years to life.  *Id.*

Defendant was represented by then Assistant Public Defender Elizabeth Timothy, who filed a motion for disclosure of confidential informant and motion to suppress evidence.  Docs. 17 and 18.  A suppression hearing was held on January 17, 2003.  Doc. 43 (transcript).  The Government opposed disclosure of the confidential informant, but not an *in camera* inquiry of the informant.  *Id.*, p. 2.  The court went with the court reporter and Government counsel to make inquiries of the confidential informant, and said the transcript would be made available (excluding information which would reveal identity), or disclosure would be permitted.  *Id.*, p. 3.  Defense counsel had no objection, thought that would resolve or narrow the issues if the court made inquiry

---

[1] Defendant has been several times advised that his amended reply would replace earlier replies.  Docs. 93, 95, and 97.

prior to hearing the motion to suppress, and gave specific questions she wished the court to put to the witness.  *Id.*, pp. 3-4.

It appeared to the court after the *ex parte* proceeding that the transcript could not be redacted and turned over without disclosing identity, but necessary facts were disclosed to the defense.  *Id.*, pp. 4-6, 8-11.  Disclosure was denied.  *Id.*, p. 8.

Evidence was presented at the motion to suppress hearing, which is summarized in the Eleventh Circuit's opinion on appeal.  Doc. 72, pp. 2-13.[2]  This court denied the motion to suppress, finding probable cause and, alternatively, finding good faith reliance on the warrant.  Doc. 43, pp. 170-177.

Defense counsel noted that the trial was set for the following Tuesday.[3]  *Id.*, p. 179.  There was discussion of continuing the trial and scheduling a plea, but Defendant did not enter a plea; the trial was continued to February 17, 2003, and was ultimately held on February 19, 2003.  *Id.*, pp. 179-180; doc. 67 (trial transcript).  Defendant was found guilty after a one day trial.  Docs. 49 (verdict) and 51 (minutes).

Sentencing was held on May 13, 2003.  Doc. 66 (transcript).  The court noted that, with an adjustment to the PSR (resulting in a criminal history Category of I rather than II), Defendant might qualify for sentencing under the "safety valve" provision of U.S.S.G. 5C1.2.  *Id.*, p. 3; *see also* 18 U.S.C. § 3553(f).  The court explained this to Defendant, including the requirement that Defendant provide information to the

---

[2] Respondent also supplied a copy of the opinion as an exhibit to the response. Doc. 88-5.  Documents already part of the record need not be furnished to the court as exhibits.  Hereafter, where the Government's exhibits are already in the record, the court references only the record.

[3] The suppression hearing was held on January 17, 2003.  The court takes judicial notice that that was a Friday.

Government before sentencing to be eligible.  Doc. 66, pp. 3-6.  Counsel conferred off the record with Defendant, then advised that "[h]e is not going to do the debriefing," and they were ready to proceed.  *Id.*, p. 6.

Defendant confirmed (as charged in the § 851 notice) that he had a 1993 felony conviction for sale of cocaine base.  *Id.*, pp. 7-8.  Given the opportunity to address the court, Defendant said he had been advised all along that he faced 30 years to life, he said if he knew the sentence would be less, "maybe I would have just went ahead on and took it."  *Id.*, p. 9.  Counsel agreed that she had so advised, but did not think this affected his decision to go to trial, and did not change his current position (facing a minimum sentence) because of his failure to qualify for the safety valve.  *Id.*, pp. pp. 10-12.  Both counsel and the court noted this case was unusual, in that more often a defendant at sentencing, after a guilty plea, finds that the sentence is higher, rather than lower, than anticipated.  *Id.*, p. 12.

The court found these issues had no effect on sentencing but were issues normally raised in a § 2255 motion.  *Id.*, pp. 12-13.  The court said that Defendant "took a shot at winning the case and being acquitted," and "stands today in exactly the same circumstance he would stand in, if he had entered a guilty plea," facing a mandatory ten year sentence.  *Id.*, p. 13.  As noted above, earlier in the sentencing proceeding Defendant decided not to provide the Government with all the information he knew, and that decision precluded safety valve treatment whether under a guilty plea or the current circumstances.  *Id.*

The court thought the belief that he was facing a longer sentence would have been more rather than less of a reason to plead and cooperate, and the decision not to

debrief made earlier confirmed the situation would have been the same if properly advised, but the court did not "purport today to prejudge any 2255 motion that may be filed later." *Id.*, p. 14.

Defendant was sentenced and advised of his right to appeal. *Id.*, pp. 19-20. It was determined that Ms. Timothy would file a notice of appeal and another attorney would be appointed. *Id.*, p. 20.

On appeal, the Eleventh Circuit agreed with this court that there was probable cause for the warrant, and found no error in denying the motion to suppress. Doc. 72, pp. 8-10, *citing, inter alia*, United States v. Smith, 918 F.2d 1501 , 1508 (11th Cir. 1990). It also agreed with this court that, even if probable cause was lacking, the good faith exception applied to the search based on a search warrant. *Id.*, pp. 10-12, *citing, inter alia*, United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

## § 2255 Review

This court does not reconsider under § 2255 errors raised and disposed of on direct appeal. United States v. Nyhuis, 211 F.3d 1340 , 1343 (11th Cir. 2000) (citation omitted). Further, "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." 211 F.3d at 1343 (citation omitted).

An issue not previously raised and decided against Defendant, on the other hand, it is procedurally barred and will not be reviewed absent a showing of cause and prejudice. *Id.*, at 1344 (citations and footnote omitted). Ineffectiveness of counsel can constitute cause, but to establish ineffectiveness the arguments Defendant faults counsel for failing to raise must have been "significant enough to have affected the outcome of his appeal." *Id.* (citation omitted). In any event, "ineffective assistance

adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000) (emphasis by the Court); Kimmelman v. Morrison, 477 U.S. 365, 376-83, 106 S.Ct. 2574, 2583-87, 91 L.Ed.2d 305 (1986) (distinguishing a Fourth Amendment claim from a Sixth Amendment ineffectiveness claim, holding "that federal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying attorney error." ). *See also* Massaro v. United States, 538 U.S. 500, 509, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003) (ineffective assistance of counsel is cognizable under § 2255 whether or not it could have been raised on appeal).

"A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice," *i.e.*, a "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 690, 693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984). In determining the former, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 689, 690, 104 S.Ct. at 2065, 2066. Defendant must show that "no competent counsel would have taken the action that his counsel did take." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). There are no rigid requirements, or absolute duty to investigate a particular line of defense. *Id.*

Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

261 F.3d at 121 (citations omitted).

As to the prejudice requirement of Strickland:

[A] petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense."  This requires a showing of more than "some conceivable effect on the outcome of the proceeding."  Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Although this standard is difficult to meet, it is significant that a petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case."  When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."

Brownlee v. Haley, 306 F.3d 1043, 1059-60 (11th Cir. 2002) (quoting Strickland); United

States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (quoting Brownlee).

The court need not approach the Strickland inquiry in any particular order, or

address both prongs if an insufficient showing is made on one.  466 U.S. at 697, 104

S.Ct. at 2069.

**Ground One**

In grounds one and two, Defendant asserts ineffective assistance of counsel in

the context of the motion to suppress.  § 2255 motion, p. 3.  Where an ineffectiveness

claim is based on the failure to file a motion to suppress evidence, a meritorious

suppression claim is not sufficient alone under Strickland.  "Only those habeas

petitioners who can prove under *Strickland* that they have been denied a fair trial by the

gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." Kimmelman, 477 U.S. at 382, 106 S.Ct. At 2587-88, (footnote omitted).  *See also* Williams v. Locke, 403 F.3d 1022, 1026 (8th Cir. 2005) (finding no prejudice under Strickland and Kimmelman; even if search warrant was invalid the officers acted in objective good faith reliance on the warrant for purposes of Leon).

In ground one, Defendant contends that counsel's consent to the *in camera* interview of the confidential informant was improper because the Government was required to disclose the identity of the confidential informant, citing Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623 (1957).  § 2255 memo, pp. 1-2.  He asserts that counsel should have argued that the confidential informant's statement was the sole basis for the warrant, so Defendant was entitled to confront the informant.  *Id.*, p. 2. Defendant claims that because counsel failed to make a Roviaro argument, it could not be raised on appeal.  *Id.*, p. 3.  Defendant contends that the record supports his claim that a cocaine sale never occurred at his house, so the confidential informant's statement had to be false.  *Id.*, p. 4.  *See also* § 2255 reply, pp. 1-3 (reiterating argument that disclosure was necessary and the warrant was unlawful).  Respondent asserts that these contentions are unsupported by the record and lack merit.  Doc. 88, pp. 4-9.

At the outset it is noted that Defendant's claim of ineffective assistance of counsel is unsupported.  His trial counsel *did* cite Roviaro (and other cases) in support of the motion to disclose.  Doc. 17, p. 3.  The Government responded that, applying the

balancing test of <u>Roviaro</u>, the Government's interests in non-disclosure outweighed

Defendant's interests in disclosure.  Doc. 25, p. 3.

　　　Further, Defendant has not shown that elaboration of the <u>Roviaro</u> argument

would have affected the outcome in this court or on appeal.  "The <u>Roviaro</u> case involved

the informer's privilege, *not at a preliminary hearing to determine probable cause for an*

*arrest or search*, but at the trial itself where the issue was the fundamental one of

innocence or guilt."  <u>McCray v. Illinois</u>, 386 U.S. 300, 309, 87 S.Ct. 1056, 1061, 18

L.Ed.2d 62 (1967) (emphasis added).

> [T]he Court in the exercise of its power to formulate evidentiary rules for
> federal criminal cases has consistently declined to hold that an informer's
> identity need always be disclosed in a federal criminal trial, let alone in a
> preliminary hearing to determine probable cause for an arrest or search.
> Yet we are now asked to hold that the Constitution . . . require[s]
> disclosure of the informer's identity in every such preliminary hearing
> where it appears that the officers made the arrest or search in reliance
> upon facts supplied by an informer they had reason to trust.

 *Id.*, at 312, 87 S.Ct. at 1063.  The Court found this was not required by the right to due

process or the right to confront witnesses.  *Id.*, at 312-313, 87 S.Ct. at 1063.  To the

extent the petitioner claimed a deprivation of the right to cross examine the arresting

officers (rather than the informant), because objections to questions about the

confidential informant's identity were sustained, this claim was rejected.  *Id.*, at 314, 87

S.Ct. at 1064.  *See also* <u>United States v. Raddatz</u>, 447 U.S. 667, 679, 100 S.Ct. 2406,

2414, 65 L.Ed.2d 424 (1980) ("although the Due Process Clause has been held to

require the Government to disclose the identity of an informant at trial, provided the

identity is shown to be relevant and helpful to the defense, it has never been held to

require the disclosure of an informant's identity at a suppression hearing.") (citing
Roviaro and McCray).

The informant here was *not* a witness to anything alleged in the indictment.
Defendant was charged with possession of more than 500 grams of cocaine with intent
to distribute on September 28, 2002.  Doc. 1.  The evidence to support this charged was
derived from the arrest (and attendant circumstances) by Officers Richards and Butler
on that date,[4] and the evidence (cocaine and other evidence) seized in the subsequent
search of Defendant's residence.  The controlled buy that was the basis for the search
was not charged.  Instead, according to the warrant application and supporting affidavit
of Investigator Tolbert, the confidential informant had made a controlled buy of cocaine
from Defendant's residence.  Doc. 18, Ex. A; also introduced at the suppression
hearing, see doc. 28 (minutes), Government Ex. 1.[5]  Tolbert stated that "during the past

---

[4] According to the report of Investigator Richards, he was riding in a patrol car
driven by Deputy Shawn Butler in the early morning hours of September 28, 2002, when
they observed a red car approach a black male walking a dog at the corner of Creamer
Road and Highway 22-A.  Doc. 18, Ex. D, p. 1.  Richards and other officers had
received information over "the past several months . . . from several sources that at all
times of the night Clavon Turner would get phone calls from his customers, and would
walk his dog out to meet people on 22-A and behind the race track to sell them
cocaine."  *Id.*  When Butler pulled the patrol car behind the black male with the dog that
night, Richards "realized that it was Clavon Turner with his dog, just like all of the
information we had received."  *Id.*  Turner was observed throwing "a white object into
the ditch with his left arm."  Richards asked and Turner agreed to a pat down, which
uncovered a large bulge of currency (later determined to be $1,455.00).  *Id.*, pp. 1-2.  In
the ditch, which appeared to Richards as recently cut and cleaned, Richards found a
small baggie with a white substance, matching what they had seen Defendant throw
and where he had thrown it.  *Id.*, p. 1.  Richards and Butler had to restrain Defendant to
effect the arrest.  *Id.*, pp. 1-2.  *See also* doc. 43, pp. 52-76 (testimony of Richards at
suppression hearing).

[5] Both exhibits included the warrant application and affidavit; the statement of the
affiant was actually Ex. B to the warrant application.

21 days a reliable confidential informant purchased cocaine from the residence described in Exhibit A."  *Id.*, p. 3.  Further, he said that "the confidential reliable informant was searched and given monies to purchase cocaine from that residence and was visibly watched entering and exiting the residence," then "came directly to your affiant and turned over the cocaine that was purchased from the residence."  *Id.*  He stated that "the confidential source has provided information in the past to your affiant which has proven true, accurate, and reliable," and "has directed your affiant to two arrest [sic] for sell [sic] and also possession of cocaine."  *Id.*  *See also* doc. 72 (opinion on appeal), pp. 3-4, quoting this language.

The defense was advised for purposes of going forward on the suppression motion that there was a single controlled buy, under standard procedure, and that it was more recent than 21 days.  Doc. 43, p. 6.  Because the informant was fearful and provided a basis for this fear, the court found disclosure should not be permitted.  *Id.* This court said:  "The analysis would change, of course, if evidence with respect to this controlled buy was going to be offered at trial; but, as I understand the government's position, it does not intend to offer evidence of this buy."  *Id.*, pp. 6-7.  There is no suggestion that evidence of this buy was introduced at trial.

The court also noted that the testimony of the confidential informant supported probable cause, and if the additional information had been included in the officer's affidavit then probable cause would have been *more* clear, not less.  *Id.*, p. 7.  Nothing suggested to the court "any basis to question the validity of the affidavit to the warrant." *Id.*, pp. 7-8.

Further, this was not a case where an allegedly reliable source merely advised an officer about criminal activity. The confidential informant here was searched, given money, accompanied to Defendant's residence by Tolbert, observed entering and exiting the residence by Tolbert, and immediately returned to Tolbert with the cocaine. These additional circumstances make a less compelling case for Defendant than that rejected in <u>McCray</u>, where the officers did not orchestrate a controlled buy or obtain a warrant.[6] Defendant has not established error of counsel or prejudice as to ground one.

**Ground Two**

In ground two, Defendant asserts ineffective assistance of counsel in the context of obtaining a <u>Franks</u> hearing and the motion to suppress. § 2255 motion, p. 3. He claims that counsel should have submitted statements and affidavits to support the request for such a hearing, citing the prosecutor's assertion that counsel had put only "conclusory allegations" in her motion. § 2255 memo, p. 4, citing the suppression transcript (doc. 43) at pp. 12-16.[7] Counsel's erroneous failure to properly preserve the claim, it is argued, left Defendant without an appeal on this issue. *Id.*, p. 5. Defendant asserts that while the court said a transcript of the *in camera* interview with the confidential informant would be made available, counsel never obtained a copy. *Id.*

---

[6] There, two officers testified they had been told by an informant that the defendant was selling narcotics and had narcotics on his person, and could be found at a certain location at a certain time. 386 U.S. at 302-304, 87 S.Ct. at 1058-59. They drove to that area with the informant, who pointed out defendant, and then left on foot. *Id.* The officers observed the defendant for a time, walking with a woman, then a man, then walking quickly when he saw the police car. *Id.* They placed him in their vehicle and found heroin in a search. *Id.*

[7] Defendant includes these pages as Exhibit A to his motion, but the court references the record. *See supra*, n. 1.

Defendant claims that the issue of the confidential informant's identity should have been properly preserved and then raised on appeal.  *Id.*  Defendant contends that if counsel had argued that the confidential informant's statements were the sole basis for the warrant, and if it was then proven the statements were false, all of the evidence would have been suppressed.  *Id.*, p. 6.

Defendant additionally claims, in his reply, that counsel failed to submit documents at the suppression hearing to impeach Tolbert and the confidential informant, referencing Exhibits E, F, G, and H, attached thereto.  § 2255 reply, p. 4. Exhibits E, F, and G are copies of letters written to Defendant in the year 2005, and could not have been introduced at a hearing in 2003.[8]  Exhibit H is a purported photocopy of Tolbert's affidavit complaint of September 28, 2002.  The narrative was obviously written after the search of the residence, however, and its relevance to probable cause to support the search is not explained.

The Government responds that Defendant's contentions are unsupported by the record and lack merit.  Doc. 88, pp. 10-11.

The Court in <u>Franks</u> held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  <u>Franks v.</u>

---

[8] These letters, from (respectively) the Evidence Custodian for the Gulf County Sheriff's Office, Evidence and Property Technician for the Gulf County Sheriff's Office, and the Clerk of Court in Gulf County, respond to Defendant's requests for evidence or paperwork.

Delaware, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).  If a

defendant establishes perjury or reckless disregard by a preponderance of evidence,

and the warrant is insufficient absent the false material, then the fruits of the search

must be excluded.  *Id.*  The Court noted that probable cause may be founded on

hearsay and information supplied by informants, "[b]ut surely [the affidavit] is to be

'truthful' in the sense that the information put forth is believed or appropriately accepted

by the affiant as true."  *Id.*, at 165, 98 S.Ct. at 2681 (citations omitted).

The Court discussed the "competing values that lead us to impose limitations" on

the rule it announced.  *Id.*, at 166-171, 98 S.Ct. at 2681-84.

> In sum, and to repeat with some embellishment what we stated at the
> beginning of this opinion: There is, of course, a presumption of validity
> with respect to the affidavit supporting the search warrant.  To mandate an
> evidentiary hearing, the challenger's attack must be more than conclusory
> and must be supported by more than a mere desire to cross-examine.
> There must be allegations of deliberate falsehood or of reckless disregard
> for the truth, and those allegations must be accompanied by an offer of
> proof.  They should point out specifically the portion of the warrant affidavit
> that is claimed to be false; and they should be accompanied by a
> statement of supporting reasons.  Affidavits or sworn or otherwise reliable
> statements of witnesses should be furnished, or their absence
> satisfactorily explained.  Allegations of negligence or innocent mistake are
> insufficient.  *The deliberate falsity or reckless disregard whose
> impeachment is permitted today is only that of the affiant, not of any
> nongovernmental informant.*

*Id.*, at 171-172, 98 S.Ct. at 2684 (emphasis added).

Defendant's claim that counsel made only conclusory allegations and failed to

support the motion with affidavits is not well taken.  The Government indeed argued, as

now referenced by Defendant, that a Franks hearing was not warranted on the

conclusory allegations set forth in Defendant's motion, which were not supported by any

offer of proof.  Doc. 43, pp. 12-14.  The Government also argued that the confidential

informant's testimony to the court bolstered the fact of the sale. *Id.*, p. 14. Defense

counsel explained that one of the problems in drafting the motion, making it hard to

prepare an affidavit for Defendant, was that "we didn't really know exactly what they

were saying." *Id.*, p. 15. Following the *ex parte* proceeding, the defense knew the

confidential informant was saying the sale was recent to the warrant, and Defendant

told counsel (during the recess) that he would testify he did not make a sale from his

residence within 21 days before the warrant. *Id.* After talking with Defendant as to

"what he wants to do, and discussing the consequences of that testimony, I think [my

proffer] entitles us to a hearing on the motion." *Id.*, pp. 15-16. The court responded

"[a]ll right. Please call your first witness." *Id.*, p. 16. An evidentiary hearing ensued.

Thus, Defendant *had* the benefit of a Franks hearing, and cannot show prejudice for

counsel's failure to properly support the motion. The court found none of the

information provided to the judge issuing the warrant was untrue aside from the clerical

error of Tolbert using the name Richards. *Id.*, pp. 174-176.

Defendant also claims that counsel never obtained a copy of the *ex parte*

interview of the confidential informant, so the identity issue was not properly preserved

for appeal. As set forth as to ground one, Defendant is not entitled to any relief on the

failure to disclose the confidential informant, whether on the merits or through an

ineffectiveness of counsel claim. As for the transcript, the court initially indicated that

either the transcript would be made available, excluding information which would reveal

identity, or the court would determine that identity should be disclosed. Doc. 43, p. 3.

After the *ex parte* proceeding, it was clear to the court that the entire transcript could not

be turned over because it would identify the confidential informant. *Id.*, pp. 4-5. It was

not clear whether disclosure of details and logistics of the controlled buy would reveal identity.  *Id.*, p. 6.  The court thought it would be difficult to prepare a transcript and separate out the parts which would disclose identity.  *Id.*, p. 8.

The information summarized in Richards' report was essentially the basis for the prosecution in this case, but Tolbert's warrant application did not refer to any of this or to Defendant's arrest.  Doc. 18, Ex. A.  It said that the affiant, Investigator *Richards*, who appeared personally and was sworn, stated the belief that evidence of a crime was contained on the premises.  *Id.*, p. 1.  The person who personally appeared and was sworn, who signed the warrant application, was actually Tolbert.  *Id.*

Defendant has not shown that the transcript would have been made available on request, and it is unlikely in light of the court's comments.  Given that the court heard the live testimony and found *more* support for a finding of probable cause, the testimony was deemed credible.  Moreover, as set forth in <u>Franks</u> and quoted above, the relevant issue is deliberate falsehoods or reckless disregard for the truth by the affiant seeking the warrant, not by the confidential informant.  Ground two is without merit.

**Ground Three**

In ground three, Defendant asserts ineffective assistance of counsel for advising him to testify at the suppression hearing, as his testimony was used to find him ineligible for the safety valve at sentencing.  § 2255 motion, p. 4; § 2255 memo, p. 6.  Defendant asserts that he was otherwise eligible for application of the safety valve, and claims that "counsel knew that there are certain consequences" for a defendant who testifies.  § 2255 memo, p. 6, citing the sentencing transcript (doc. 66), at pp. 3, 15-16.  He asserts that his testimony was not even necessary because there was no question that he

denied making a sale to the confidential informant. *Id.*, p. 7. Had he not testified, it is argued, Defendant would have had the option of being debriefed by the Government, and the only reason he was not debriefed was on counsel's erroneous advice. *Id.*, pp. 7-8. Defendant makes the confusing assertion that while his testimony was "absolutely the truth," it was harmful to him at sentencing "for he then could not, for fear of perjury charges, refute his earlier story, had he so chosen." § 2255 memo, p. 7. After the request for disclosure was denied, counsel sought time to confer with Defendant before proceeding further with the suppression issue, because the Government had indicated that if it was pursued there would be no chance for Defendant to cooperate. Doc. 43, p. 11. "I want to make sure Mr. Turner, *especially because he's contemplating testifying*, is making the best decision under the circumstances." *Id.* (emphasis added). The court said to take as much time as necessary. *Id.*, pp. 11-12. After a brief recess, Defendant decided to proceed. *Id.*, p. 12.

At sentencing counsel said, regarding the safety valve issue, that she told Defendant "he would have to give a truthful debriefing, and we are not in a position to do that." Doc. 66, , p. 3. The court explained application of the safety valve to Defendant. *Id.*, pp. 4-6. Specifically, '[t]he fifth requirement is that, not later than the time of sentencing – now – you tell the government everything you know about this offense, and that's completely within your control." *Id.*, p. 5. Defendant was advised he did not have to say anything to anybody, it was up to him, but safety valve treatment would lower his sentence from ten years to a range of 63-78 months. *Id.*, pp. 5-6. Counsel took additional time to confer with Defendant, then advised that '[h]e is not going to do the debriefing." *Id.*, p. 6.

Defense counsel said she initially advised Defendant he qualified as a career offender due to his prior offenses, but it turned out they did not count because they were too old.  *Id.*, p. 9.  She said this was not clear to her from the record she received before trial, and admitted that she repeatedly told Defendant he was facing 30 to life.  *Id.*, p. 10.  But, she said, even if he entered a plea the sentence would be the same due to the mandatory minimum, unless he could give a safety valve proffer.  *Id.*

Regarding the motion to suppress hearing, counsel said:

[B]efore my client testified, I had very serious concerns about what I anticipated his testimony to be, and I asked you for a break.

I talked to him about the consequences of what might occur should he testify the way I anticipated him to do that – to testify; and he did testify at that point.  Our belief was that we were kind of putting all of our eggs in one basket, which was the motion-to-suppress basket.  And I expected him to plead and reserve the right to appeal that issue.  I might have even indicated that to you.[9]

But everything changed after we lost the motion to suppress, and he wanted to go to trial.  So, I don't think that my advising him that he was a career offender affected that decision.  It may have.  But I honestly thought that he was; and, if you look at his record, you can see where he's very lucky that he's not, by a weird operation of the guidelines.

*Id.*, pp. 10-11.

As the Government argues in response, in light of counsel's comments on the record, "it is highly unlikely that counsel advised defendant to testify," and she clearly spent time discussing the decision and its consequences with Defendant.  Doc. 88, p. 11, *citing* doc. 43, pp. 11, 15-16; doc. 66, p. 10.  The Government also notes that

---

9 Counsel indeed had advised that the intention was to enter a conditional plea if the motion to suppress was denied.  Doc. 43, p. 179.

Defendant's testimony at the suppression hearing could only be detrimental to him if untruthful.  Doc. 88, pp. 11-12.

Moreover, Defendant still had the opportunity to provide a debriefing at sentencing, and so he could have qualified for the safety valve despite his testimony.  If he could not debrief because of his own perjury – which if committed then continues now[10] – it is not the fault of counsel.  To counsel, Defendant was "adamant from the get-go that he did not make a sale from within that residence."  Doc. 43, p. 161.  There was no error or prejudice in allowing Defendant to so testify.

**Ground Four**

Defendant asserts ineffective assistance of counsel for failing to object to the Government's notice filed pursuant to 21 U.S.C. § 851(a).  § 2255 motion, p. 4.  The § 851 notice charged "[t]hat the Defendant was convicted of Sale of Cocaine, a felony drug offense, in the Circuit Court for the Fourteenth Judicial Circuit in and for Gulf County, Florida, in case Number 93-253."  Doc. 22.  Defendant claims this was deficient because it did not contain the state court indictment, information, police reports, or other proof of a qualifying conviction.  § 2255 memo, p. 8.  Failure to include this information allegedly "deprived [Defendant] from being able to make an informed choice as to whether or not he should challenge the use of such prior."  *Id.*

The Government responds that the notice was timely and adequate, and counsel had no basis for challenging it.  Doc. 88, pp. 13-15.

---

[10] Defendant testified at the suppression hearing that he was positive he had not sold cocaine to anyone from within his residence in the three week time frame before his arrest on September 28, 2002.  Doc. 43, pp. 136-141.  By affidavit under penalty of perjury dated March 23, 2005, he states that he *never* sold drugs from that residence to anyone.  § 2255 Reply, Ex. D.

The United States Attorney is required by § 851(a)(1) to file an information "stating in writing the previous convictions to be relied upon."  A defendant may file a written response, but "[t]he failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section."  § 851(c)(1). Defendant's claim that the notice was subject to challenge for failing to include additional information or attachments is squarely contradicted by this express language. Moreover, Defendant could not challenge the 1993 state conviction alleged in the § 851 information filed on January 10, 2003, well over five years later.  *See* 21 U.S.C. § 851(e) (the validity of a conviction imposed more than five years before the date of the information may not be challenged); United States v. Williams, 954 F.2d 668, 673 (11th Cir. 1992), *cert. denied,* 519 U.S. 869 (1996) (collecting cases and discussing the time limit of 851(e), finding the five year limitation period constitutional as it is "reasonably tailored to impose enhanced sentences on recidivists."); United States v. Reed, 141 F.3d 644, 652 (6th Cir. 1998) (noting "at least five circuits" found the time limit constitutional on due process and equal protection grounds) (citing Williams, other citations omitted).  His ineffective assistance of counsel claim on this basis is devoid of merit.

In the portion of his reply pertaining to ground four, Defendant makes the additional claim that his prior conviction did not qualify under § 851 "where Mr. Turner pled to misdemeanor charges in case no. 93-253-CF."  § 2255 reply, p. 5.  A new issue should not be raised for the first time in reply, but this claim is easily rejected.  The §

851 notice clearly set forth the conviction in 93-253 as a *felony* drug offense, for sale of cocaine.  Doc. 22.  Asked about this conviction at sentencing, Defendant told the court he "noticed in the conviction, it has that I sold 90 pieces of crack; and then it says three 20 pieces of crack," and the court said the version before it "says that you sold 20 pieces of cocaine base.  It doesn't say how big they were.  But, in any event, what you pled to was selling cocaine base?"  Doc. 66, pp. 7-8.  Defendant replied, "Yes, sir."  *Id.*, p. 8.

Defendant offers no support for his claim that this was a misdemeanor offense. To sell or purchase cocaine, or to possess with intent to sell or purchase cocaine, is a felony in Florida.  Fla. Stat. (1993 to present) § 893.13(1)(a)1 and 893.13(2)(a)1 (referencing a controlled substance as described in, *inter alia*, § 893.03(2)(a); cocaine is a Schedule II substance under § 893.03(2)(a)4).  Ground four is without merit.

**Ground Five**

Defendant claims that counsel was ineffective in failing to call Tolbert to testify at trial, in order to solicit information that he had previously given material false statements in applying for a search warrant.  § 2255 motion, p. 6; § 2255 memo, pp. 8-10. Defendant claims that if counsel had shown the jury that Tolbert previously lied to obtain a warrant, the verdict probably would have been different.  § 2255 memo, p. 9.  The Government's whole case, it is argued, "was built on two people's word, one unidentified and one a proven liar . . . ."  *Id.*  Evidence regarding Tolbert's credibility, and his prior relationship with Judge Witten, would allegedly have created a reasonable doubt.  *Id.*, p. 10.

Defendant claims that Exhibits A-H attached to his reply were available to counsel, who should have examined them and called Tolbert to testify.  § 2255 reply, p. 6.  Defendant contends that these exhibits "[separately] and collectively demonstrate that a chain of custody issue exists or, that Officer Tolbert gave false testimony" to obtain the warrant.  *Id.*, p. 7.  The exhibits, however, do not support any entitlement to relief.[11]

Further, Defendant's counsel could not have called Tolbert as a witness simply to impeach him.  It is true that a witness can be impeached by any party.  Fed.R.Evid. 607.  "However, under Rule 607 a witness may not be called to the stand solely for the purpose of impeaching him and thereby obtaining testimony that is otherwise inadmissible."  Bankatlantic v. Blythe Eastman Paine Webber, 955 F.2d 1467, 1475, n. 6 (11th Cir. 1992), *cert. denied*, 506 U.S. 1049 (1993) (citations omitted).  Irrelevant evidence is not admissible under  Fed.R.Evid. 402.  To be relevant, this impeachment evidence had to have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed.R.Evid. 401.  Even if there were unrefuted evidence that Tolbert had been untruthful in a completely unrelated case, it would only

---

[11] Exhibit A is a motion filed by a defendant in the Northern District of Alabama in 2004, citing Roviaro and other cases.  Exhibit B is the order granting a motion to suppress involving Tolbert, introduced by counsel at the motion to suppress hearing and discussed ahead.  Exhibit C is the 2005 affidavit of Lee Nunery, stating that on or about September 28, 2002 he was incarcerated at the Gulf County Jail and asked by Investigator Piercy if he would be willing to say he purchased cocaine from Defendant Turner.  Piercy allegedly advised that if Nunery would so state, he could walk out of the jail and the pending charge would be forgotten.  Even if true, there is no indication that Nunery (or anyone else) advised defense counsel of this encounter.  As Exhibit D, Defendant submits his own affidavit stating that he never sold drugs from his residence on Past Time Drive to anyone.  Exhibits E-H are described *supra*.

be relevant to his credibility, if he testified regarding something relevant.  As previously noted, he did not testify at all.

Furthermore, it is not true, as asserted by Defendant, that the Government's case "was built on two people's word," or that one of them, Tolbert, was "a proven liar."  It was only the search warrant, not the indictment or prosecution in this case, which was based on statements of the confidential informant and Tolbert.

Additionally, Tolbert was hardly "proven" to be a "liar."  At the suppression hearing, defense counsel asked about a case in Gulf County against Sheila Maxwell, in which Judge Moore granted a motion to suppress evidence based, in part, on finding that Tolbert had made statements knowingly false or with reckless disregard for the truth.  *Id.*, p. 108.  Tolbert identified the order, and it was introduced into evidence.  *Id.*, p. 109; Doc. 28 (minutes), Defendant's Ex. Three.  On cross examination, Tolbert said that Witten, before he became a judge, had been the prosecutor on that case in 1997, when Moore's order was issued.  Doc. 43, pp. 117-119.  The State Attorney's Office investigated the incident and found that Tolbert had provided accurate information from his investigation.  *Id.*, p. 119.  A letter so stating was sent to the sheriff, and introduced into evidence in this case.  *Id.*, pp. 120-121; Doc. 28, Government Ex. 2.

The net effect of the order and the report on Tolbert's credibility was negligible at best.  Moreover, Judge Moore's order and the State Attorney's investigation report were both introduced at the suppression hearing as a result of the efforts of Defendant's attorney.  They were before this court in finding probable cause and, alternatively, good faith, and were in the record before the Eleventh Circuit in affirming the judgment.  *See* doc. 43, pp. 171-1776 (finding that Tolbert arranged a controlled buy and believed that it

occurred from Defendant in his house, that the basis for this belief was accurately disclosed in obtaining the warrant, and even if there were not probable cause, the warrant was issued on accurate information provided in good faith); and doc. 72 (opinion), pp. 7-12 and nn. 2 and 4 (discussing this court's findings, noting that on review of denial of a motion to suppress, the facts are construed in favor of the prevailing party, and on review of the good faith finding, the underlying facts found by the district court are binding unless clearly erroneous).

Further, the Government argues that calling Tolbert as a witness would actually have been counter-productive for the defense.  Doc. 88, pp. 15-17.  It is argued that, even assuming Tolbert could have been called for the sole purpose of introducing the impeachment evidence, this would have opened the door to testimony regarding the controlled buy from Defendant's residence, and may even have allowed testimony that Tolbert monitored a controlled buy where Defendant sold drugs to a confidential informant from his vehicle.  *Id.*, p. 17.  This may have entered into counsel's determination not to call this witness.  This final claim of ineffective assistance of counsel is without merit.

**Recommendation**

It is therefore respectfully **RECOMMENDED** that the amended § 2255 motion,

doc. 84, filed by Clay V. Turner, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on January 4, 2006.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**